IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| WAYNE REDDING, : | |
| a/k/a WAYNE REDDICK, : | |
| : | |
| Plaintiff, : | |
| : | No: 5:12-CV-174 (CAR) |
| VS. : | |
| : | |
| STATE OF GEORGIA, *et al.*, : | |
| : | Proceedings Under 42 U.S.C. § 1983 |
| Defendants. : | Before the U.S. Magistrate Judge |

## RECOMMENDATION

Before the Court is the Motion to Dismiss the Recast Complaint filed by Defendants Sheila Oubre, Rodney Smith, Paul Duncan, Earl Pressley, and O'Narrius Wilcox. Doc. 72. Because Plaintiff Wayne Redding, a/k/a Wayne Reddick, failed to exhaust his administrative remedies regarding all but one of his claims before filing his original complaint, and because Plaintiff's only properly exhausted claim does not state a claim upon which relief may be granted, it is **RECOMMENDED** that the Motion to Dismiss the Recast Complaint be **GRANTED**. In light of this recommendation, it is **FURTHER RECOMMENDED** that each of the twenty-nine pending Motions filed by Plaintiff between January 7, 2013 and May 20, 2013 be **DENIED** as moot.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Wayne Redding, a/k/a Wayne Reddick, who is proceeding *in forma pauperis* in the above-styled case, is currently an inmate at Augusta State Medical Prison. Doc. 114. On May 14, 2012, Plaintiff filed his original complaint pursuant to Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 *et seq.*, and 42 U.S.C. § 1983.[1] Doc. 1. The Court

---

[1] When Plaintiff filed his original complaint, he was an inmate at Baldwin State Prison.

ordered Plaintiff to supplement his original complaint because he did not use the standard complaint form required by the Court, and because he did not describe how the specific actions of each Defendant violated his constitutional rights. Doc. 4. Following a frivolity review of Plaintiff's original complaint (Doc. 1) and his multiple supplements (Docs. 5, 6, 7, 8, 9, 10) under 28 U.S.C. § 1915A, the Court determined that Plaintiff stated colorable claims against Defendants "the State of Georgia," "the Department of Corrections," "Warden Ouber," and "Unit Manager Smith." Doc. 11. While the Court effectuated service, Plaintiff continued to file various notices, motions, and other pleadings (Docs. 14, 15, 16, 17, 20, 21, 22, 24, 29).

On August 6, 2012, Defendants State of Georgia, Georgia Department of Corrections, Warden Sheila Oubre, and Unit Manager Rodney Smith filed a Motion to Dismiss or, in the alternative, Motion for More Definite Statement and Frivolity Review. Doc. 31. In the Motion, Defendants argued that Plaintiff, using the alias Wayne Reddick, previously filed five frivolous lawsuits qualifying as "strikes" under the Prison Litigation Reform Act ("PLRA"), and that as a result, this case should be dismissed because Plaintiff exceeded the three strikes provision of the PLRA. Id. Alternatively, Defendants sought clarification because Plaintiff's ever-changing allegations were so ambiguous that Defendants could not reasonably respond to them. Id. Plaintiff responded by filing six new pleadings, which he styled as responses, motions, and notices (Docs. 34, 35, 36, 37, 38, 39) respectively.

On September 7, 2012, the Court recommended that Defendants' Motion to Dismiss or, in the alternative, Motion for More Definite Statement and Frivolity Review be denied in part and granted in part. Doc. 41. The recommendation concluded that Defendants' Motion to Dismiss should be denied because, although he had previously filed five frivolous lawsuits using an alias, Plaintiff sufficiently alleged the existence of an imminent danger of serious physical injury to

exempt this case from the three strikes provision of the PLRA. Id. Even so, the recommendation concluded that Defendants' alternative Motion for More Definite Statement and Frivolity Review should be granted. Id. The Court ordered Plaintiff to recast his original complaint entirely, advising that "[t]he recast complaint shall be in place of and will be substituted for the original complaint and all attachments, supplements, and other documents that have been filed." Id. The Court subsequently adopted this recommendation. Doc. 51.

On September 16, 2012, Plaintiff executed his recast complaint against seven named individuals affiliated with Baldwin State Prison for incidents that allegedly occurred between September 2011 and September 2012. Doc. 43. Plaintiff specifically named Warden Sheila Oubre, Unit Manager Rodney Smith, "Nurse Jordan," Sergeant Earl Pressley, "Sergeant Harris," Officer O'Narrius Wilcox, and Officer Paul Duncan as Defendants. Id. at 5-6. Although the recast complaint contained a haphazard recital of allegations about prison officials' treatment of Plaintiff during his incarceration at Baldwin State Prison, Plaintiff most clearly enumerated claims involving the conditions of his confinement, the adequacy of his medical care, and incidents of excessive force and retaliation for filing this case. Docs. 43, 43-1.

Regarding the conditions of his confinement, Plaintiff alleged that he is "disabled" and that he requires the constant use of a wheelchair to avoid being placed "in a form of total restraints 23-24 hours a day." Doc. 43 at 7. Plaintiff also claimed that he experienced "discrimination" based on Defendants' failure to provide "doctor[']s prescribed bottom bunk, wheelchair, medication, foods" as well as Defendants' denial of "[his] right to participate in services, programs, or activities of a public entity." Id. As a result, Plaintiff contended that his ability to shower and to otherwise maintain his personal hygiene has been curtailed and that he has suffered falls, seizures, and various physical injuries. Id. at 7-9.

Regarding the adequacy of his medical care, Plaintiff alleged that Defendants exhibited "outright intentional deliberate indifference to [his] medical needs" by taking his wheelchair, refusing to honor his bottom bunk profile, and failing to provide him with prescribed medications to treat his "hypertension, seizure disorder, mental illness, arthritis, [and] epilepsy." Doc. 43-1 at 1-2. Plaintiff further claimed that he was in "imminent danger of death presently" from the lack of wheelchair and medications. Id. at 2. As a result, Plaintiff contended that he experienced seizures, high blood pressure, loss of vision, loss of hearing, different infections, physical weakness, depression, suicidal thoughts, and post-traumatic stress disorder. Id.

Regarding incidents of excessive force and retaliation, Plaintiff alleged that on June 14, 2012, Sergeant Pressley, Sergeant Harris, and Officer Wilcox "slammed Plaintiff to [the] floor, stood on [his] neck [and] legs, [and] [he was] kicked by [Officer] Wilcox while handcuffed." Doc. 43 at 8. Additionally, Plaintiff claimed that on September 6, 2012, Unit Manager Smith and Officer Duncan "slapped and punched Plaintiff while in handcuffs, saying [he] better drop the lawsuit cause [his] old ass can't take these ass whippings every day." Id. Plaintiff further contended that Officer Duncan verbally threatened him on June 21, 2012 and that Warden Oubre and Officer Duncan verbally threatened him on June 25, 2012. Id.

In relief, Plaintiff's recast complaint sought unspecified money damages, the return of his wheelchair, to be released from "punitive" segregation, to be transferred to Augusta State Medical Prison, and to "correct" his name to Wayne Reddick. Doc. 43 at 9.

Following frivolity review of Plaintiff's recast complaint under 28 U.S.C. § 1915A, the Court prepared another recommendation, which concluded that Plaintiff stated the following cognizable claims: (1) Eighth Amendment and ADA claims concerning the conditions of his confinement against Warden Oubre and Unit Manager Smith; (2) an Eighth Amendment claim

4

concerning inadequate medical care against Warden Oubre, Unit Manager Smith, and Nurse Jordan; and (3) First Amendment and Eighth Amendment claims concerning retaliation and excessive force against Unit Manager Smith, Officer Duncan, Officer Wilcox, Sergeant Pressley, and Sergeant Harris. Doc. 47. The recommendation further concluded that Plaintiff's Fourteenth Amendment claims concerning due process and equal protection should be dismissed. Id. After no timely objections were received, the Court adopted the recommendation. Doc. 54.

While the Court effectuated service of the recast complaint, Plaintiff continued to inundate the Court with numerous motions, notices, and other pleadings (Docs. 59, 60, 61, 62, 63, 64, 66, 67, 68, 71). On November 21, 2012, the Court notified Plaintiff about its inability to serve "Nurse Jordan" and "Sergeant Harris" based on the limited information provided by Plaintiff and directed Plaintiff to furnish the Court with additional information about the correct name and current mailing address for both Defendants. Doc. 65.[2] Plaintiff has not yet filed any additional information with the Court to remedy these apparent service defects. On December 17, 2012, the five Defendants who were properly served with the recast complaint—Warden Oubre, Unit Manager Smith, Sergeant Pressley, Officer Duncan, and Officer Wilcox—filed a Motion to Dismiss the Recast Complaint. Doc. 72.

Since Defendants filed their Motion to Dismiss the Recast Complaint, Plaintiff has filed forty-eight separate motions, notices, and other pleadings in this case, almost all of which have been duplicative or frivolous. In light of Plaintiff's prolific filing habits, the Court granted Defendants' Motion for Protective Order (Doc. 117) and relieved Defendants from having to respond to any of Plaintiff's future filings pending the resolution of the Motion to Dismiss the Recast Complaint. Doc. 118.

---

2 The record indicates that "Sergeant Harris" is deceased and that no one named "Nurse Jordan" works at Baldwin State Prison. Docs. 57, 58.

DISCUSSION

Defendants' Motion to Dismiss the Recast Complaint (Doc. 72) argues, *inter alia*, that Plaintiff failed to exhaust his administrative remedies and that Plaintiff failed to state a claim upon which relief may be granted. Because Plaintiff failed to exhaust his administrative remedies regarding all of his claims except for his top bunk assignment claim before filing his original complaint, all of Plaintiff's other claims must be dismissed for failure to exhaust. Additionally, because Plaintiff's top bunk assignment claim does not state a claim upon which relief may be granted under either the Eighth Amendment or the ADA, this claim also must be dismissed. If the Court adopts the recommendation to grant Defendants' Motion to Dismiss the Recast Complaint, it is appropriate to deny Plaintiff's twenty-nine pending Motions as moot.

A.  Exhaustion of Administrative Remedies

Pursuant to the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] [...], or any other federal law, by a prisoner confined in any [...] prison [...] until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of all available administrative remedies is a mandatory precondition to filing suit, and federal courts cannot waive the exhaustion requirement. Booth v. Churner, 532 U.S. 731, 734 (2001); Alexander v. Hawk, 159 F.3d 1321, 1326 (11th Cir. 1998). The exhaustion requirement requires proper exhaustion in compliance with the administrative process, and claims that are not properly exhausted must be dismissed. Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999).

It is well-established that the exhaustion of available administrative remedies is mandatory, even when the administrative procedures set forth by the prison are futile or inadequate. Alexander, 159 F.3d at 1326. That is, to satisfy the exhaustion requirement, the plaintiff must pursue all available administrative remedies fully. Harper, 179 F.3d at 1312. Because the plaintiff

must exhaust his administrative remedies fully before commencing his lawsuit in federal court, any claims that were not exhausted before the plaintiff filed his original complaint must be dismissed even if the plaintiff exhausts his administrative remedies at some future date. Smith v. Terry, 491 Fed. Appx. 81, 83-84 (11th Cir. 2012).

Where a motion to dismiss is based on the affirmative defense of failure to exhaust administrative remedies, review of the motion involves a two-step process. Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008). The court first looks to the factual allegations in the motion seeking dismissal as well as those in the plaintiff's response. Id. If they conflict, the court takes the plaintiff's version of the facts as true. Id. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." Id. If the complaint is not subject to dismissal under the plaintiff's version of the facts, the court must proceed to the second step, making specific findings of fact to resolve the disputed factual issues related to exhaustion. Id. At the second stage of the analysis, it is the defendant's burden to prove that the plaintiff failed to exhaust his available administrative remedies. Id.

Although Plaintiff makes numerous vague and unsubstantiated allegations about the inadequacy of the grievance procedure at Baldwin State Prison, Defendants have provided the Court with undisputed evidence that Plaintiff failed to exhaust his available administrative remedies regarding all but one of his claims before Plaintiff filed his original complaint in this Court. More specifically, Defendants have attached the affidavit of Jo Hunding, the Chief Counselor at Baldwin State Prison, which is labeled as Exhibit 1. Doc. 72-2 at 2-6. Defendants also have attached the Georgia Department of Corrections Standard Operating Procedure (GDOC SOP), which is labeled as Exhibit A. Id. at 8-19. The GDOC SOP sets forth the statewide grievance procedure under which inmates must attempt to resolve their grievances internally by

following three steps: (1) file an informal grievance to which the prisoner's counselor must respond within 10 days; (2) file a formal grievance to which the warden must respond within 30 days; and (3) file an appeal to which the commissioner's office must respond within 90 days. Id.

Additionally, Defendants have provided Plaintiff's grievance history, which is labeled as Exhibit B. Docs. 72-2 at 21-22. According to Plaintiff's grievance history, Plaintiff filed twenty-five grievances at Baldwin State Prison between January 20, 2009 and May 11, 2012. Id. Plaintiff only pursued two of those twenty-five grievances, grievance number 97918 and grievance number 108442, through all necessary steps in the three-step statewide grievance procedure before he filed his original complaint on May 14, 2012. Id. Defendants also have attached the documents associated with both grievance number 97918 and grievance number 108442, which are labeled as Exhibit C and Exhibit D respectively. Id. at 23-34.

Regarding grievance number 97918, Plaintiff completed the informal grievance form on September 15, 2011. Doc. 72-2 at 24. The informal grievance form alleged that Plaintiff was assigned to a top bunk on September 13, 2011, contrary to his bottom bunk profile, and that Plaintiff fell from the top bunk while having an uncontrollable seizure, which caused serious injuries. Id. After completing the informal grievance procedure, Plaintiff filed a formal grievance form on September 23, 2011, which reiterated his prior allegations about having been wrongly assigned to a top bunk and falling from it. Id. at 25. The Warden reviewed Plaintiff's formal grievance and found that: "[t]here is no proof to support your allegations that you fell from the top bunk. The assigned beds top to bottom were corrected on 9/13/11 (the same day). Grievance denied." Id. Plaintiff next appealed to the Commissioner's Office, which partially granted his appeal on December 15, 2011, finding that: "[o]ur review revealed that you were wrongfully placed in a top bunk and that you do have medical profiles indicating wheelchair, bottom bunk,

and lower range housing. However, further review revealed no witnesses or other factual evidence to substantiate your allegation that you had a seizure and fell from the top bunk. Your top bunk assignment has been corrected. No further action is required by the Office of Investigations and Compliance." Id. at 28.

Regarding grievance number 108442, Plaintiff completed the informal grievance form on January 14, 2012. Doc. 72-2 at 30. The informal grievance form alleged that rotten food was served on January 13 and 14, 2012, and that Plaintiff only received one piece of meat on his sandwich and no salt, pepper, spoon, or sugar. Id. After completing the informal grievance procedure, Plaintiff filed a formal grievance form on January 27, 2012, which reiterated his prior complaints about food services and added new unrelated complaints about medical care. Id. at 31. The Warden reviewed Plaintiff's formal grievance and found that: "[t]his concern has been addressed with the Food Services Manager. If you continue to have problems, you are to report your concerns to the Officer assigned to the Dorm. The Officer will ensure that the concern is corrected." Id. Plaintiff next appealed to the Commissioner's Office, which denied Plaintiff's appeal on March 7, 2012, because Plaintiff failed to follow the GDOC SOP by including more than one issue in his formal grievance. Id. at 34.

Only grievance number 97918, which addresses Plaintiff's top bunk assignment, is germane to the claims set forth by Plaintiff in his recast complaint. It is undisputed that Plaintiff properly exhausted his available administrative remedies regarding his claim that he was assigned to a top bunk on September 13, 2011, contrary to his bottom bunk profile, and his claim that he fell from the top bunk while having an uncontrollable seizure and suffered serious injuries. By contrast, Defendants have provided the Court with undisputed evidence that grievance number 108442 does not relate to any of the claims set forth in the recast complaint. Defendants also have

9

provided the Court with undisputed evidence that despite filing twenty-five grievances at Baldwin State Prison between January 20, 2009 and May 11, 2012, Plaintiff only properly exhausted his available administrative remedies regarding his top bunk assignment claim before he filed his original complaint in this case on May 14, 2012. Because Plaintiff failed to exhaust his available administrative remedies regarding all but one of his current claims before filing his original complaint, it is appropriate for the Court to dismiss all of Plaintiff's current claims except for his top bunk assignment claim. See Smith, 491 Fed. Appx. at 83-84 (finding that because the plaintiff failed to exhaust his administrative remedies before he filed his original complaint, dismissal for failure to exhaust was proper).

   B.  Legal Standards to Dismiss for Failure to State a Claim

A complaint is subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure if it fails "to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, citing Twombly, 550 U.S. at 556. When considering a motion to dismiss for failure to state a claim, the Court must accept all allegations in the complaint as true, and the Court must construe the facts in the light most favorable to the plaintiff. Lopez v. Target Corp., 676 F.3d 1230, 1232 (11th Cir. 2012). The Court, however, is not bound to accept as true "'a legal conclusion couched as a factual allegation.'" Iqbal, 556 U.S. at 678, quoting Twombly, 550 U.S. at 555. It is well-established that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 556 U.S. at

679, citing Twombly, 550 U.S. at 556. Additionally, *pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed. Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011).

    C. Plaintiff's Eighth Amendment Claim

Insofar as Plaintiff is attempting to bring his top bunk assignment claim against Warden Oubre and Unit Manager Smith under the Eighth Amendment, Plaintiff fails to state a cognizable claim because he does not allege sufficiently specific facts to satisfy both the objective component and the subjective component of an Eighth Amendment condition of confinement claim.

The Eight Amendment prohibits cruel and unusual punishment, but "only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment." Whitley v. Albers, 475 U.S. 312, 319 (1986). All claims challenging conditions of confinement under the Eighth Amendment mandate that the plaintiff demonstrate an "unquestioned and serious deprivation of basic human needs" such as, medical care, exercise, food, warmth, clothing, shelter, or safety. Rhodes v. Chapman, 452 U.S. 337, 347 (1981). "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. To establish an Eighth Amendment condition of confinement claim, the plaintiff must satisfy the following two components: (1) the objective component, meaning that the prison official's act or omission was "sufficiently serious" to pose a substantial risk of serious harm; and (2) the subjective component, meaning that the prison official acted with a "sufficiently culpable state of mind" or "deliberate indifference" regarding the condition of confinement at issue. Farmer v. Brennan, 511 U.S. 824, 834 (1994); Hudson v. McMillan, 503 U.S. 1, 8 (1992).

In this case, Plaintiff fails to state a plausible conditions of confinement claim regarding his top bunk assignment because he does not allege facts sufficient to satisfy the objective component. That is, Plaintiff does not allege specific facts to show that having been assigned to a top bunk subjected Plaintiff to a condition that posed "a substantial risk of serious harm." Farmer, 511 U.S. at 834. To establish a substantial risk of serious harm, the condition at issue not only must be "sure or very likely to cause serious illness and needless suffering," but it also must give rise to "sufficiently imminent dangers." Baze v. Rees, 553 U.S. 35, 49 (2008), quoting Helling v. McKinney, 509 U.S. 25, 33, 34–35 (1993). In the recast complaint, Plaintiff repeatedly alleges that Warden Oubre and Unit Manager Smith failed to provide him with a bottom bunk as part of his broad list of complaints about his conditions of confinement at Baldwin State Prison. Nowhere in the recast complaint, however, does Plaintiff clearly allege how his assignment to a top bunk amounts to a substantial risk of serious harm, and as previously discussed, Plaintiff's top bunk assignment claim is the only properly exhausted claim before the Court. Even if Plaintiff fell from the top bunk while having an uncontrollable seizure, this single occurrence does not establish that the top bunk assignment posed a substantial risk of serious harm to Plaintiff. Further, insofar as Plaintiff summarily alleges that he is in imminent danger of death or bodily harm, Plaintiff wholly fails to provide any specific factual allegations to link his unsubstantiated allegations of imminent danger with his top bunk assignment. Therefore, Plaintiff fails to establish the objective component of an Eighth Amendment claim.

Plaintiff also fails to state a plausible condition of confinement claim regarding his top bunk assignment because he does not allege facts sufficient to satisfy the subjective component. Stated another way, Plaintiff does not allege specific facts to show that either Warden Oubre or Unit Manager Smith had a "sufficiently culpable state of mind" or acted with "deliberate

indifference" to his health or safety. Farmer, 511 U.S. at 834. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. An action or omission by prison officials with no signs of malevolence or a culpable state of mind does not give rise to an Eighth Amendment claim. Baze, 553 U.S. at 50.

Nowhere in the recast complaint does Plaintiff allege specific facts to establish that Warden Oubre or Unit Manager Smith knew of and disregarded the excessive risk to Plaintiff's health and safety posed by his top bunk assignment. Similarly, Plaintiff wholly fails to allege specific facts to show that Warden Oubre and Unit Manager Smith were aware of facts from which the inference could be drawn, and they actually drew the inference that Plaintiff's temporary top bunk assignment posed a substantial risk of serious harm. There also is no indication in the recast complaint that either Warden Oubre or Unit Manager Smith personally authorized Plaintiff's top bunk assignment or had any reason to be aware of the top bunk assignment before Plaintiff filed his informal grievance. At most, Plaintiff's temporary top bunk assignment could be considered negligent, but mere negligence does not rise to the level of deliberate indifference. Therefore, Plaintiff fails to establish the subjective component of an Eighth Amendment claim.

Accordingly, even after accepting the factual allegations in the recast complaint as true and construing those allegations in the light most favorable to Plaintiff, Plaintiff does not allege "sufficient factual matter" to state a top bunk assignment claim against Warden Oubre and Unit Manager Smith under the Eighth Amendment that is "plausible on its face." Iqbal, 556 U.S. at 678.

D. Plaintiff's ADA Claim

To the extent that Plaintiff is attempting to bring his top bunk assignment claim against Warden Oubre and Unit Manager Smith under the ADA, Plaintiff fails to state a cognizable ADA claim. Pursuant to the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a cognizable claim under Title II of the ADA, the plaintiff must allege: "(1) that he is a 'qualified individual with a disability;' (2) that he was 'excluded from participation in or [...] denied the benefits of the services, programs, or activities of a public entity' or otherwise 'discriminated [against] by such entity;' (3) 'by reason of such disability.'" Shotz v. Cates, 256 F.3d 1077, 1079 (11th Cir. 2001), quoting 42 U.S.C. § 12132.

Even after accepting the factual allegations in the recast complaint as true and construing those allegations in the light most favorable to Plaintiff, Plaintiff does not allege a plausible ADA claim against Warden Oubre and Unit Manager Smith with regard to his top bunk assignment claim.[3] Preliminarily, Plaintiff never clearly articulates how, if at all, his top bunk assignment claim relates to Title II of the ADA. Rather, Plaintiff summarily alleges in the recast complaint that all named Defendants "have deliberately refused to accommodate the Plaintiff's disability related needs in such matters [as] bottom bunks, mobility (wheelchair), medications (medical and mental health care), personal hygiene, cell sanitation, food, clothing, bedding, and virtually all other prison programs to include chaplin indigent services," Doc. 43-1 at 1. Assuming for the sake of argument that Plaintiff is a "qualified individual with a disability," Plaintiff fails to make any

---

3 The Court has liberally construed the allegations in Plaintiff's recast complaint and assumes that Plaintiff intended to sue both Warden Oubre and Unit Manager Smith in their official capacities, thus allowing Plaintiff's ADA claims to survive frivolity review because any such official capacity claims were, in essence, against the Georgia Department of Corrections. Doc. 47.

specific factual allegations to show that he was "excluded from participation in or [...] denied the benefits of the services, programs, or activities of a public entity" or otherwise "discriminated [against] by such entity."42 U.S.C. § 12132. Plaintiff also fails to make any specific factual allegations to demonstrate that any exclusion or discrimination suffered by Plaintiff occurred "by reason of such disability." Id. Moreover, the Court need not accept as true Plaintiff's legal conclusion that Defendants "violated" the ADA, which Plaintiff attempts to couch as a factual allegation. Doc. 43-1 at 1, 6. See Iqbal, 556 U.S. at 678, quoting Twombly, 550 U.S. at 555.

Accordingly, insofar as Plaintiff's recast complaint attempts to set forth a top bunk assignment claim against Warden Oubre and Unit Manager Smith under the ADA, Plaintiff does not allege "sufficient factual matter" to state a top bunk assignment claim under the ADA that is "plausible on its face." Iqbal, 556 U.S. at 678.

E.  Plaintiff's Twenty-Nine Pending Motions

Also before the Court are the following twenty-nine Motions all of which were filed by Plaintiff between January 7, 2013 and May 20, 2013: (1) "Motion Extraordinary for Court Only" (Doc. 77), (2) "Motion for Relief" (Doc. 82), (3) "Plaintiff Motion for Relief" (Doc. 83), (4) "Supplemental Motion for the Attorney General to Defend the Constitutionality of Title II [of] the Americans with Disabilities Act" (Doc. 88), (5) "Motion Not to Dismiss Complaint" (Doc. 89), (6) "Motion to Proceed with Discovery" (Doc. 90), (7) "Request for Judgment" (Doc. 91), (8) "Motion to Show Cause" (Doc. 92), (9) "Motion to Show Cause" (Doc. 93), (10) "Preliminary Motion to Suppress" (Doc. 94), (11) "Motion Outside Pleadings for Discrimination of the Disabled by Attorney General, Motion for Speedy Trial, [and] Motion to Dismiss Affidavits of Perjury," (Doc. 96), (12) "Emergency Motion" (Doc. 97), (13) "Extraordinary Motion" (Doc. 105), (14) "Motion for Productive Action [and] Motion to Add Defendants" (Doc. 107), (15)

"Motion" (Doc. 109), (16) "Motion for Order and Recommendation for Relief, Motion of Conspiracy, [and] Motion Supplemental to Show Cause" (Doc. 111), (17) "Supplemental Motion to Add Defendants" (Doc. 112), (18) "Motion to Show Cause, Motion to Add Defendants, Motion to Dismiss Defendants' Affidavits" (Doc. 113), (19) "Motion to Show Cause" (Doc. 115), (20) "Relief in Monetary Damages Punitive and Compensatory" (Doc. 119), (21) "Motion, Motion for Court Order, Motion, Supplemental Motion, and Motion" (Doc. 121), (22) "Motion to Dismiss Disciplinary Report for Assaulting an Officer" (Doc. 122), (23) "Supplemental Motion for Discovery Material Request" (Doc. 123), (24) "Supplemental Motion, Motion, [and] Motion Reserving the Right to File Additional Motions" (Doc. 125), (25) "Motion Reserving the Right to File Additional Claims" (Doc. 126), (26) "Motion to Show Cause" (Doc. 129), (27) "Motion to Show Cause" (Doc. 130), (28) "Motion for Justice" (Doc. 131), and (29) "Motion to Show Cause" (Doc. 132).

After review of each of the above-listed Motions filed by Plaintiff, it appears that Plaintiff's twenty-nine Motions are devoid of merit. Several of the pleadings that Plaintiff styles as Motions do not actually request that the Court make a specified ruling or order. In his "Motion Extraordinary for Court Only," for example, Plaintiff briefly mentions credit card fraud, the sale of drugs, cell phones, and green dot cards and asks whether he may contact members of the press. Doc. 77. Other pleadings that Plaintiff styles as Motions appear to be attempts to supplement previously identified claims. Docs. 82, 83, 91, 92. In addition, some of Plaintiff's Motions request relief that is plainly unavailable, such as, his "Motion to Proceed with Discovery" and his "Supplemental Motion for Discovery Material Request" after the Court previously ordered that discovery be stayed. Docs. 90, 123. Other Motions filed by Plaintiff appear to be frivolous, including, his "Motion Outside Pleadings for Discrimination of the Disabled by Attorney General,

16

Motion for Speedy Trial, [and] Motion to Dismiss Affidavits of Perjury" and his "Motion to Dismiss Disciplinary Report for Assaulting an Officer." Docs. 96, 122. Without wading too far into the depths of Plaintiff's various Motions, and in light of the recommendation to grant Defendants' Motion to Dismiss the Recast Complaint, it is appropriate to deny each of Plaintiff's twenty-nine Motions as moot.

## CONCLUSION

For the above-stated reasons, it is **RECOMMENDED** that Defendants' Motion to Dismiss the Recast Complaint (Doc. 72) be **GRANTED**. It is **FURTHER RECOMMENDED** that the twenty-nine Motions filed by Plaintiff (Docs. 77, 82, 83, 88, 89, 90, 91, 92, 93, 94, 96, 97, 105, 107, 109, 111, 112, 113, 115, 119, 121, 122, 123, 125, 126, 129, 130, 131, 132) be **DENIED** as moot. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this recommendation with the district judge to whom this case is assigned within fourteen (14) days after being served with a copy thereof.

**SO RECOMMENDED**, this 24th day of May, 2013.

s/ Charles H. Weigle_____<br>
Charles H. Weigle<br>
United States Magistrate Judge